## J. J. NORTON, et al., Respondents, v. W. E. STEWART LAND COMPANY, et al., Appellants.

### Kansas City Court of Appeals, March 7, 1921.

1. **VENDOR AND VENDEE: Real Estate: Vendor Unable to Perform Purchaser May Rescind and Recover Purchase Money Without Tendering Performance Before Suit.** Where defendants placed themselves in a position where a merchantable title was beyond their power to deliver under contract, plaintiffs upon breach thereof had the option of waiving the forfeiture by accepting another tract of land, or to rescind and demand the return of their payments, and tender of performance by plaintiff before suit was not a prerequisite to the rescinding of the contract.

2. **PARTIES: Joint Liability: Evidence Held Sufficient to Warrant Verdict Against Two Companies Having Officers in Common.** In an action against two land companies by purchaser for rescission of contract, and return of price paid, evidence *held* not to warrant the conclusion that one of said companies, having officers in common with the other, and the names of both being used interchangably during the trial by counsel for defendants, was not interested in the subject-matter in controversy to a sufficient extent to support a verdict against the two companies.

Appeal from the Circuit Court of Jackson County.—
*Hon. Thomas B. Buckner,* Judge.

AFFIRMED.

*Ellis, Cook & Dietrich* for respondents.

*W. F. Zaumbrunn, E. E. Bowers* and *F. S. Stratton* for appellant.

ARNOLD, J.—This action is for the recovery of money plaintiffs paid defendants on the purchase price of 20 acres of land in the State of Texas which defendants sold to plaintiffs and agreed to convey under the

terms of a written contract dated March 8, 1919, the total consideration therefor being $7000. There was paid in cash $500 and $100 in checks respectively and $400 in Liberty bonds taken at face value, making a cash payment by plaintiffs to defendants of $1000 earnest money. The $400 in Liberty bonds was not then delivered as the bonds were at the home of plaintiffs in Hoisington, Kansas. The contract called for payment in cash of one-half of the purchase price. To cover this cash payment, in addition to the $1000 cash and Liberty bonds paid, plaintiffs executed and delivered a series of five notes of $500 each, payable at stated periods, which defendants accepted in lieu of cash for $2500.

Defendants at that time were engaged in the sale of Texas lands by conducting excursions for prospective buyers, by special trains. Plaintiffs, husband and wife, were passengers on one of these excursion trains. They examined the land in question and while yet on the excursion train, executed the said contract at the instance of one T. W. Scott, defendants' agent. Plaintiffs left the train somewhere in Kansas and proceeded to their home at Hoisington.

The testimony tends to show that when agent Scott reached the office of defendants in Kansas City, he was advised that the land described in the contract with plaintiffs was part of a tract sold to one R. H. Thackwray of Griggsville, Illinois. Agent Scott was directed by defendants to go to Hoisington and to take over the $400 of Liberty bonds accepted by the company as part of the $1000 cash payment.

Five days after the execution of the contract of sale agent Scott appeared at Hoisington and the bonds were delivered to him as agreed at the time the contract of sale was executed. Further the testimony shows that Mrs. Elizabeth Norton, one of the plaintiffs, asked Scott where the deed and abstract were, and he said "Haven't you got them?" and when informed they had not been received Scott said "They should have been here, I

don't understand it, they will be here by the week end
or the first of the week."

April 9th the Stewart Farm Mortgage Company,
one of the defendants, by letter directed agent Scott to
get Mr. Norton, one of the plaintiffs, out on another
excursion with a view to changing him onto some other
tract, if possible, "as we notified you when you came
in that we could not give him this tract, and we would
like to have you get him out on another excursion at the
earliest moment and let us see if we cannot change him
to another tract, and possibly increase his sale." The
testimony shows that agent Scott again went to Hoising-
ton and advised plaintiffs of the situation, and of the
prior sale to Thackwray of the tract under controversy.
(The Thackwray sale was made in February.)

On April 21, 1919, plaintiffs wrote defendants
stating they were aware of the conditions in regard to
the tract of land purchased by them, and "that you can't
possibly deliver a deed to us on account of having sold
to another party prior to our purchase of same and since
this condition exists we will thank you to at once return
our bonds and cash we paid on same and we will take no
further action in regard to the same, since we are not
interested in anything you could possibly show us."

April 26th, C. F. Thomas, secretary of defendant
Stewart Farm Mortgage Company wrote, in reply to
plaintiffs' letter of April 21, that the defendants were
able to give good title and that Thackwray had been
transferred to another tract. Thackway in his dep-
osition states that no such transfer of him had been
made; and said that he was still in possession of the
property in question and had raised a crop of broom
corn thereon.

The petition alleges the payments, as stated above,
the relation of the parties defendant to each other, and
prays that defendants be restrained from negotiating
and transferring the negotiable promissory notes given
by plaintiffs, and from attempting to enforce collection

thereof, that same be surrendered to the court, that the notes be duly cancelled and the money and Liberty bonds, amounting to $1000, he returned, with interest thereon from April, 21, 1919.

The answer admits the sale of the land for the consideration alleged in the petition, but denies the inability of defendants to convey a good merchantable title to the lands purchased, and states that defendants stand ready, able and willing, and at all times have stood ready, able and willing to discharge each and every obligation in the said contract, "and hereby and in court tender to plaintiffs a warranty deed to the land so purchased by them." A jury was waived and the cause went to trial before the court. Verdict and judgment were for plaintiffs, as prayed in the petition, and from this finding defendants appeal.

Defendants complain that the court committed error in holding that plaintiffs had a right to rescind their contract without first tenderng their willingness to comply therewith. We are of the opinino that the trial court was correct in thus holding. A clause in the contract is as follows: "The company further agrees to furnish to the purchaser at the time of the delivery of the deed an abstract of title to the above land properly certified showing good and merchantable title . . ." The contract also provides that the land company agrees to sell and convey "or cause to be conveyed" said land by warranty deed to purchasers as soon as title is shown to be sufficient.

The contract further provides that "the total pur chase price shall be $7000 cash, or the said purchaser shall have the option to pay $3500 in cash and $3500 in vendor's lien notes secured by deed of trust in the total sum of $3500 and divided into 5 annual payments fo⁻ the sum of $700 each, and due in one, two, three, four, five years . . . and to be delivered within thirty (30) days from date hereof, or within a reasonable time thereafter."

Defendants agreed to furnish the purchasers at the time of the delivery of the deed with an abstract of the land showing a good merchantable title within 30 days of the date of the contract, "or within a reasonable time thereafter." At this time, as specified, plaintiffs were to execute and deliver the five promissory notes, if they exercised this option, in preference to paying cash. Defendants failed to comply with their contract to furnish deed and abstract, but resorted to delay in order to induce plaintiffs to accept another tract. It was then that plaintiffs' cause of action accrued; and it was then at the option of plaintiffs whether they would waive their right to a forfeiture or insist on their right to rescind and demand the return of their money and bonds. They chose to do the latter, which was their right. The testimony tends to show that defendants had placed themselves in a position where a merchantable title was beyond their power to deliver. The facts relative to the prior sale to Thackwray were related to plaintiffs by defendants' agent Scott.

In 36 Cyc., p. 632, this fundamental principle of law is laid down: "In a suit by the vendor to enforce performance of a contract for the sale of land, the vendee will not be compelled to accept the title unless it is a marketable one; that is, one which will not expose him to litigation. To force upon the vendee a title which he may be compelled to defend in the courts is to impose upon him a hard bargain; and this a court of equity in the exercise of its discretion, will refuse to do, irrespective of the question whether the title is good or bad." [McCroskey v. Ladd, 28 Pac. 216; Maltby v. Thews, 171 Ill. 264; Brown v. Widen (Ia.), 102 N. W. 158, and others.]

In Fry on Specific Performance, par. 862, this same principle is stated: "If, therefore, there be any reasonable chance that some third person may raise a question against the owner of the estate after the completion of the contract, the court may consider this to be a circum-

stance which renders the bargain a hard one for the purchaser, and one which in the exercise of its discretion it will not compel him to execute."

Applying this principle of law to the case at bar we must conclude that, under the facts and circumstances of the case, plaintiffs had the right to rescind the contract on April 21, 1919. They exercised this right by letter on that date and demanded the return of their money, bonds and notes.

The covenants were mutual and we hold that tender by the plaintiffs was not a necessary prerequisite to recovery, in view of the prior contract of sale to Thackwray and possession by him of the land. This same observation applies to defendants' contention that plaintiffs, before a right of action accrued, were required to advise defendants of their election to pay all cash or half cash and secure terms for the balance. We hold that in the light of the information received by plaintiffs from defendants' agent, relative to the prior sale to Thackwray and his possession of the property, that tender of performance by plaintiffs was not a prerequisite to the rescinding of the contract by them.

The theory of the petition, and the one upon which the case was tried is, that the prior sale to Thackwray and his possession of the land deprived defendants of the power to perform the contract and constituted a breach thereof, which gave plaintiffs the right to rescind and recover the payments made on the purchase price. We accept this theory of the case.

This court held in Montgomery v. Wise, 138 Mo. App. 176:

"The rule is universal that in the sale of land where the promise to pay the purchase money, and make a deed, are mutual and dependent covenants, the vendor, in an action to recover the purchase money, must either offer to convey or tender a deed. [Olmstead v. Smith, 87 Mo. 602; Davis v. Barada-Ghio Real Estate Co., 115 Mo. App. 327; Pursley v. Good, 94 Mo. App. 382.] But it was said in the last case that if one party repudiates

the contract or has placed himself in a condition that prevents him from so doing, this dispenses with the necessity of proving tender. And it was so said in Harwood v. Diemer, 41 Mo. App. 48, and further that, after a party to a contract has repudiated it, he is not entitled to a tender of performance by the other contracting party.' ''

We are not impressed · by defendants' declaration that the ''Stewart Farm Mortgage Company never became a party to any of these contracts and, so far as the evidence discloses, had no connection with the subject-matter whatever.'' This statement is not supported by the letter of said company which follows:

''Stewart Farm Mortgage Co.,
Scarritt Building
Kansas City, Missouri.
688    J. J. Norton,
April 9th, 1919.

''Mr. T. W. Scott,
Hutchinson, Ks.
Dear Sir:

We would like to have you get Mr. Norton out on an early trip with a view to changing him on to some other tract if possible, as we notified you when you came in that we would not give him this tract and we would like to have you get him out on another excursion at the earliest possible moment and let us see if we cannot change him on another tract and possibly increase his sale. We would like very much to hear from you regarding this at the earliest possible moment.
                         Yours very truly,
                  STEWART FARM MORTGAGE COMPANY,
                              C. A. DAVIS
                            Vice President.''

W. E. Stewart testified that he is president of both the Stewart Land Company, a Kansas corporation, and

the Stewart Farm Mortgage Company, a Missouri corporation. He further testified that the two companies have offices in common, and defendants' counsel used the two names interchangeably in questioning Mr. Stewart. These circumstances, in our opinion, do not warrant the conclusion that the Stewart Farm Mortgag' Company was not interested in the subject-matter in controversy to a sufficient extent to support a verdict against the two companies.

We find no reversible error in the case. Affirmed. All concur.