**AMERICAN RIO GRANDE LAND & IRR. CO. et al. v. BELLMAN et ux.**
**(No. 7330.)**

(Court of Civil .Appeals of Texas. San Antonio. April 1, 1925. Rehearing Denied May 13, 1925.)

1. **Conspiracy ⚷⟞⟞19 — Finding as to damages from conspiracy to defraud in sale of land held not supported by evidence.**

In suit for conspiracy to defraud in sale of lands, in which plaintiffs claimed damages of $11,039, finding that they were damaged in sum of $293,475 *held* not supported by evidence and properly set aside by court.

2. **Conspiracy ⚷⟞⟞19—Fraud ⚷⟞⟞58(1)—Conspiracy or fraud must be clearly established.**

While conspiracy may be proven by circumstantial evidence, it must be clearly established to support an action for rescission or for damages, and same degree of proof is essential to show actionable fraud.

3. **Appeal and error ⚷⟞⟞837(7)—Finding which has been set aside may not be considered for any purpose.**

A finding of damages which has been properly set aside comes to naught, and may not be considered as a finding that plaintiffs were injured by conspiracy found.

4. **Contracts ⚷⟞⟞94(1)—Rescission not enforced, unless complainant has been injured by fraud practiced on him.**

Rescission of a contract will not be enforced because of deceit in procuring it, unless it is shown that complainant has been injured by fraud practiced upon him.

5. **Election of remedies ⚷⟞⟞7(1)—Remedy of rescission barred, where cause submitted to jury on theory of damages.**

In suit for rescission, and in alternative for damages for deceit in sale of lands, cause having been submitted to jury solely on theory of damages, remedy of rescission was thereby excluded.

6. **Judgment ⚷⟞⟞251(3)—Plaintiffs' elected remedy of damages to exclusion of rescission where acquiescing in submission of case for damages.**

In suit for rescission and in alternative for damages for deceit in sale of lands in which court submitted case solely on theory of damages under Vernon's Ann. Civ. St. Supp. 1922, art. 3973b, plaintiffs by acquiescing in submission of case for damages to exclusion of rescission thereby elected to stand on former and abandon latter, and court might not after verdict enter judgment for rescission.

7. **Judgment ⚷⟞⟞198—Judgment of rescission of contract for sale of land held erroneous, where not supported by finding of injury to plaintiffs.**

In suit for rescission of contract for deceit in sale of lands, judgment of rescission *held* erroneous, where not supported by finding that plaintiffs had been injured by deceit of defendants.

. On Motion for Rehearing. ·

8. **Conspiracy ⚷⟞⟞19—Evidence insufficient to warrant finding of conspiracy between vendor and vendee to defraud subsequent purchasers.**

In action against vendor. and vendees of large tract of land, which vendees resold in small tracts, evidence *held* insufficient to sustain finding of conspiracy to defraud purchasers by sales at inflated prices through false representations.

9. **Vendor and purchaser ⚷⟞⟞3(3)—Vendor not charged with acts of vendee in resale of land to subsequent purchasers.**

That vendor, who sold a large tract of land to vendee, knew that such land was to be resold in smaller tracts by vendee would not of itself charge vendor with responsibility for methods and representations *subsequently* used by its vendee in reselling land or render vendee agent of vendor.

10. **Conspiracy ⚷⟞⟞19—Contracts and deeds held inadmissible, in absence of showing of conspiracy to defraud in sale of land.**

In suit against land companies for conspiracy to defraud in sale of lands which one defendant had purchased from its codefendant, contracts between defendants and deeds through which small parcels of larger bodies were conveyed to individual purchasers *held* inadmissible, in absence of showing of conspiracy.

11. **Conspiracy ⚷⟞⟞19—Representations not made to plaintiffs held inadmissible, in absence of conspiracy to defraud.**

In suit for conspiracy to defraud in sale of land, testimony concerning representations made to witness by strangers to litigation and agents of defendants, which were not made to plaintiffs, and which could have had no influence on plaintiffs in purchasing the land, were inadmissible in absence of any showing of a conspiracy.

Error from District Court, Hidalgo County; L. J. Polk, Judge.

Suit by George Bellman and wife against the American Rio Grande Land & Irrigation Company, the W. E. Stewart Investment Company, and others. Judgment for plaintiffs, and certain defendants bring error. Affirmed in part, and in part reversed and remanded.

Wm. S. West, of Brownsville, Irl F. Kennerly and Kennerly, Williams, Lee & Hill, all of Houston, Gause & Kirkpatrick, of Mercedes, and Glasscock & Leslie, of McAllen, for plaintiffs in error.

Dawson, Henry & Walker, of Mission, and Epperson & Cameron, of Edinburg, for defendant in error.

SMITH, J. On December 15, 1917, the American Rio Grande Land & Irrigation Company (hereinafter designated American Company) entered into a contract with the W. E. Stewart Land Company (hereinafter designated Land Company) for the sale to and

---

⚷⟞⟞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

purchase by the latter of about 30,000 acres of land in Hidalgo county; including 45.15 acres involved in this suit and known, as farm tract 276, block 131, being a part of the west tract subdivision. Subsequently, on October 25, 1919, George Bellman entered into a contract with the Land Company for the purchase of farm tract 276, and on the same day the tract was conveyed to him by general warranty deed from the W. E. Stewart Farm Mortgage Company (hereinafter designated Mortgage Company), to which the tract had been conveyed in the meantime. The consideration paid by Bellman was $16,-254, of which amount $14,144 was in cash, and the remaining $3,050 was paid by Bellman, assuming to pay five certain promissory notes payable to the American Company and secured by a lien on the land involved. Bellman went into possession early in 1921, improved and cultivated the premises, and was still in possession of and using the same at the time of the trial of this cause late in June, 1924.

In September, 1921, Bellman, joined by his wife, brought this suit for the purpose of rescinding the sale and purchase upon the ground that he had been induced to purchase the land through false and fraudulent representations made by the agents of the Stewart Companies in pursuance of a conspiracy between those companies and the American Company to bring persons into Hidalgo county and sell them lands in said county by means of such deceit. The suit when originally brought, in 1921, was for rescission only, but after entering into the trial, and after the pleading of the parties had been read to the jury, Bellman, obtaining leave for the purpose, filed a trial amendment, and, as an alternative of rescission, prayed for damages sustained by him on account of the deceit alleged to have been practiced upon him by the Stewart Companies. These damages were fixed by Bellman at $11,039, being the alleged difference between the actual and the represented values of the land at the time of the purchase. The suit was brought against the American Company, the Land Company, the Mortgage Company, the W. E. Stewart Investment Company, and John M. and R. A. Rowland, who were acquitted in the trial without objection from the other parties.

The cause was tried by jury, who in response to special issues found that the conspiracy existed as and for the purposes alleged; that the alleged false representations of material facts were made to Bellman, who relied thereon and purchased the land on account thereof; and that the difference between the reasonable market value of the land at the time of purchase and its reasonable market, had it been as represented by the sellers, was $6,500 per acre (or, as stated by appellants and not questioned by appellees, $293,495 on the 45.15 acres in contro-

versy). Because of its obvious absurdity, the trial court disregarded this finding as to damages, treating it as immaterial, rendered judgment rescinding the sale, and awarding recovery to appellees of the amount they had paid for the land, with interest, and canceling the notes assumed by them. The American Company and the Stewart Companies have appealed, as the judgment was rendered jointly against all of them.

[1, 2] We will first consider the finding of the jury, in effect, that the difference between the actual and the represented value of the land was $293,475. The tract involved embraced 45.15 acres. The consideration Bellman paid for it was $16,254, or $360 an acre. Appellees alleged in their petition that the actual market value of the land was only $100 an acre, and that they were damaged in the sum of $11,039. It seems the lowest estimate in evidence of the actual value was $50 an acre, and the highest estimate of the value, if the representations had been true, was $1,000 an acre. Notwithstanding these allegations and that evidence, however, the jury found the difference in the actual and the represented values to be $6,-500 an acre, or an aggregate damage of $293,-475. The trial court concluded that this finding was not "influenced by prejudice or passion," but that it was "arrived at through ignorance or mistake on the part of the jurors by using erroneous methods to arrive at the same." Naturally, appellants find no solace in this distinction, which, however accurate it may be, does not render the finding less offensive to justice and fairness. It is just as deadly as it would have been if corruptly arrived at, which, of course, no one contends it was, and, however arrived at it is so obviously preposterous as to make it a farce and a travesty, to be instantly rejected for any and every purpose. The trial court promptly and properly set it aside and disregarded it, and appellees, in the exercise of good taste and candor, do not offer it for any purpose, arguing that it is immaterial. Appellants contend that the finding is of such extreme nature and purport as to discredit the remaining findings of the jury, and we are disposed to sustain the contention. It would indeed be difficult to reconcile its presence among rational findings emanating at the same time from a common source and affecting the rights of identical parties, even if the remaining findings were supported by evidence which would ordinarily suffice as a basis for a jury verdict. We have very carefully reviewed the evidence in the case, however, and have reached the conclusion that it does not warrant the finding of a conspiracy between appellants to defraud appellees, while the testimony upon the issues of waiver and of actionable fraud is so unsatisfactory as to raise a serious doubt of its sufficiency to warrant the action of the court or jury in resolving those issues in

favor of appellees. While conspiracy may be proven by circumstantial evidence, it must nevertheless be clearly established in order to support an action for rescission or for damages; and the same degree of proof is essential to show actionable fraud. The unsatisfactory state of the record with reference to these issues, especially when viewed in the shadow of the absurd finding on the issue of damages, envelops the whole verdict in such doubt as to require that it be set aside.

[3] Let us look now at the case from another standpoint. As stated, the court properly set aside the finding upon the issue of damages. So, as it was left standing by the trial court, the verdict of the jury is that there was a conspiracy to defraud; that the sellers falsely represented the quality of the land in material matters, and thereby deceived appellees into purchasing the land at the stipulated price. There is no finding however, that appellees were injured as a result of the facts found, nor can the finding of the jury upon the issue of damages serve to supply this omission. That finding, having been properly set aside, comes to naught, and may not be considered for any purpose.

[4] It is the law in this state as elsewhere that rescission of a contract will not be enforced because of deceit in procuring the contract, unless it is shown that the complaining party has been injured by the fraud practiced upon him. In other words, it is not sufficient for the party seeking to rescind merely to show fraud, and the resulting agreement, but he must go further and show that the deceit practiced upon him has resulted in actual injury and damage to him. Russell v. Transp. Co., 113 Tex. 441, 251 S. W. 1034, 258 S. W. 462. The court, however, set aside the finding of the jury upon the measure, and concluded that, as appellees had brought the suit "for a rescission and in the alternative for damages," and as the "cause is not to be considered in its entirety but can be separated as between rescission and damages," and the jury's finding on damages "being immaterial in the court's opinion on the question of rescission, I believe that the motion of plaintiffs for a judgment of rescission should be granted." In pursuance of this conclusion, the court entered judgment for rescission. We think this was error.

[5-7] Again, the court appears to have submitted the case solely upon the theory of damages, laying down therefor the measure provided by statute for that character of action. Article 3973b, Vernon's Ann. Civ. St. Supp. The court did not submit the alternative theory of rescission, nor did appellees object to this method of submission, or request that the case be put to the jury on the latter theory. Whether appellees under the law were required to elect their remedy before submission of the cause need not now be decided; for, undoubtedly, when they acquiesced in the submission of the case for damages, and in the exclusion of the case for rescission, they thereby elected to stand upon the former and abandon the latter. And, having set aside a finding of the jury upon an essential issue in the case submitted, it was beyond the power of the court to apply the remaining findings to another case, not submitted, and render judgment upon the substituted remedy.

Summarizing, we hold, first, that the verdict of the jury in the respects mentioned is not supported by the evidence; second, that, the cause having been submitted to the jury solely on the theory of damages, the remedy of rescission was thereby excluded; third, the remedy of damages and the remedy of rescission are repugnant each to the other, and, while they may be set up in one pleading one in the alternative of the other, the pleader must seasonably elect between them, standing upon one and abandoning the other, and the court may not after verdict re-elect for him; and, fourth, the judgment of rescission was erroneous because not supported by a finding that appellees had been injured on account of the deceit of appellants. For these reasons the judgment must be reversed.

Appellees cite and urge the recent case of American Rio Grande Land & Irrigation Co. v. Barker, 268 S. W. 506, decided by this court, as being analogous to this case. But the controlling and fundamental facts in that case are quite different from those disclosed by the record in the case at bar, particularly with reference to the issues of conspiracy and deceit. In that case it was shown, for instance, that the American Company, which owned the land, actively participated with the Stewart Companies in inveigling Barker into making the contract of purchase, accepted and appropriated a substantial portion of the consideration paid by Barker for the land, and then withheld the title from him. There are other distinguishing characteristics in the cases, which are essentially fact cases, so that the decision of one can have but little, if any, influence upon the decision of the other.

The judgment in favor of John M. Rowland and R. A. Rowland will be affirmed. In all other respects, the judgment will be reversed and the cause remanded for another trial.

Affirmed in part, and in part reversed and remanded.

### On Motion for Rehearing.

In deference to the motion for rehearing of defendants in error, we deem it proper to discuss the evidence introduced to show that the American Company upon the one hand, and the Stewart companies upon the other, entered into a conspiracy to bring non-

residents into Hidalgo county and sell them lands at inflated prices through false and fraudulent representations. In the original opinion we held that evidence was insufficient to establish the fact of such conspiracy. We adhere to that ruling, and will endeavor to state the substance of the evidence upon that issue.

[8, 9] 1. On December 15, 1917, the American Company entered into a contract with the Land Company to sell to the latter a body of irrigable land in Hidalgo county, aggregating 30,000 acres, which appears to have been subdivided into small tracts of 40 acres each, or less. It was provided in this contract that the land should be conveyed by the American Company to the Land Company or its nominees from time to time as the purchase price was paid or secured to be paid by the Land Company, the first lot, of 2,000 acres, to be paid for $100,000 in cash at the execution of the contract, and $80,000 in cash on or before January 10, 1918, and then conveyed to the Land Company; and it was further provided that the remaining 28,000 acres should be taken by the Land Company at the rate of 2,500 acres every 90 days, to be paid for upon the basis of $22.50 cash per acre, and $67.50 per acre in first vendor's lien notes to be executed by the Land Company or its vendees, to be secured in any event by deeds of trust. All of the land was to be thus taken and paid for on or before December 31, 1920. The contract provided in detail for the extension over said lands of the American Company's irrigation system, as well as a system of roads, and for forfeiture of the contract in event of default by the Land Company. The contract was in such form as to apparently enable either party to enforce specific performance against the other. The Land Company deposited with the American Company the sum of $25,000 as "earnest money," to be forfeited to the latter in event of the former's default in its obligations. This contract and the acts of the parties done thereunder are relied upon by defendants in error as evidence of a conspiracy between the two companies to procure and bring sundry persons into Hidalgo county and sell them lands upon false and fraudulent representations and promises not intended to be fulfilled. It is contended that because of the terms of the contract, and the alleged conduct of the parties thereto in departing from the specific methods of carrying out some of the provisions thereof, the alleged conspiracy was established. We overrule this contention. The contract in question does not warrant or tend to support a finding of conspiracy. It provides in specific and enforceable terms for the purchase and sale of the property, provides for the deposit of $25,000 by the vendee as evidence of its good faith and ability, for the payment by the vendee of $180,000 in cash within three

months from the date of the instrument, and for complete performance by the vendee within a specified period, under penalty of the forfeiture of the cash deposit and of all rights of the vendee in case of its default. It is true, as defendants in error point out, that the instrument contained a provision that conveyances should be made to the vendee or, at its option, to its nominees, but this provision is by no means uncommon in large transactions in land, and raises no presumption of rascality. Neither does the charge that in the course of the transaction the terms of payment were in certain instances modified by the parties to meet the varying emergencies and exigencies arising in the performance of the contract. The parties had the power to modify specific provisions of the contract, just as they had the power to make the original agreement, and the fact that the vendor was willing to concede such modifications in order to enable the vendee to perform the controlling provisions of the contract should not be construed into a conspiracy to defraud subsequent purchasers. The transaction was a very large one, involving the sale of a vast body of land lying in a region which has become known throughout the country for its remarkable productivity. It is a matter of course that the American Company knew these lands were to be resold in smaller tracts by the Land Company, but this knowledge would not within itself serve to charge the vendor with responsibility for the methods and representations subsequently to be used by its vendee in reselling the land or render the vendee the agent of the vendor. It is not such a case as that of Paschen v. Lovett (Tex. Com. App.) 255 S. W. 385. In that case, according to the construction of the Commission of Appeals, the contract was one in which the vendor granted the vendee the exclusive right to "buy and sell" the lands there involved; in which the vendor and vendee, by the express terms of the contract, together selected the agent by whom the resales were to be made, and stipulated the terms of the resales whereby the vendor in effect retained control of the lands, designated the agent by whom they were to be resold, and did not bind the vendee to purchase any of the lands except such as it should be able to resell. None of these conditions, which controlled the decision in the cited case, exist in the contract now under consideration. In that case, moreover, the question was not one of conspiracy, but of agency, which is a very different thing. We hold, then, that there was nothing in the contract here in question or in the acts done thereunder which showed or tended to show the existence of the conspiracy complained of by defendants in error.

2. Said contract of purchase and sale was executed in December, 1917, and thereafter, in October, 1919, defendants in error

Bellman purchased from the Stewart Company the particular tract here involved which had been conveyed to the latter by the American Company in pursuance of said contract. Several months after defendants in error had so purchased the tract here involved, in February and May, 1920, the American Company and the W. E. Stewart Investment Company in one case, and the Stewart Farm Mortgage Company in the other, entered into other contracts, similar in nature, providing for the purchase and sale of other bodies of land than that covered by the first contract and involved in this suit. Defendants in error now contend that these subsequent contracts constituted further evidence of the alleged conspiracy, and introduced them in evidence as proof thereof. For the reasons already stated with reference to the first contract, the later contracts, executed long after the time defendants in error claim to have been defrauded in pursuance of said conspiracy, did not support or tend to support the charge of conspiracy. If, because of the presence of some provisions not included in the first contract, the later contracts had been objectionable as tending to show the alleged conspiracy, then they were not available to defendants in error in this cause, for the simple reason that they were entered into several months after defendants in error purchased the land now in controversy, and concerned lands in no wise involved in this suit. If the making of the first contract and the acts done thereunder prior to Bellman's purchase did not within themselves serve to show a conspiracy, then the subsequent act of forming a conspiracy could not concern defendants in error, whose rights and liabilities had long since been fully fixed. It follows, then, that the contracts and the acts done thereunder did not themselves evidence a conspiracy between the parties thereto to deceive defendants in error or other subvendees into the purchase of subdivisions of the larger tracts.

3. Prior to the transactions here involved, the American Company borrowed $1,200,000 from the Missouri State Life Insurance Company, to secure the payment of which it gave said company its notes and a deed of trust on the acreage covered by the several contracts we have discussed. In September, 1920, nearly a year after defendants in error purchased the land here in controversy, one of the Stewart Companies (which had purchased from the American Company the lands covered by its contract with the latter company in May, 1920) transferred to the Insurance Company a large number of vendor's lien notes taken in the sale of lands covered by said contract and not embracing the tract here involved. It was recited in this transfer that the American Company was indebted to the Insurance Company, that the latter had released its lien from the lands covered by said notes, and that

the transfer was being made directly to the Insurance Company under an agreement between the three parties for that purpose. Now defendants in error have set up the foregoing facts as evidence of the alleged conspiracy between the American Company and the Stewart Companies to deceive defendants in error (who had theretofore purchased the tract here in controversy) and others into purchasing small tracts out of the large bodies covered by the three contracts we have discussed. We perceive nothing of a sinister nature in this transaction, however. The American Company was indebted to the Insurance Company, the Stewart Company was indebted to the American Company, both debts were secured by liens upon the same lands, and by the simple process of transferring the notes directly to the Insurance Company the Stewart Company in part paid its debt to the American Company, and to that extent reduced the latter's debt to the Insurance Company, at the same time procuring a release of the lands from the original lien, so that the purchasers of the smaller tracts would take their purchases free of prior incumbrances. This was done by agreement of the three parties, and the whole transaction placed of record. It was a simple, practical, normal adjustment of legal obligations, was consistent with good faith, and did not raise or support the charge of conspiracy asserted by defendants in error.

4. It appears from the record that W. F. Shaw was manager and chief engineer of the American Company prior to 1920, when he became its vice president, and in 1921 its president. In the two contracts between that company and the Stewart Companies executed in February and May, 1920 (several months after defendants in error purchased the tract here in controversy), it was provided that the Stewart Companies should at their own expense construct canals and ditches on the land covered by said contracts whereby the American Company's irrigation system could be extended thereover. To this end Stewart organized the Capisallo Construction Company, a corporation, of which Shaw was made president. The construction company thus organized took over the work of constructing said canals, and in doing so employed some of the engineering force theretofore used by the American Company; it also established its offices in the same building in which the American Company's offices were located. Shaw was designated as the representative of the latter company in approving and accepting the completed work of the construction company, which he also supervised; the object of the parties being to secure uniformity in said canals and to properly co-ordinate them with the irrigation system already in operation. Defendants in error contend that these facts established or tended to estab-

lish their charge that a conspiracy existed between the contracting concerns to deceive subsequent purchasers of smaller tracts of land covered by the contracts mentioned. We do not think the facts recited are inconsistent with good faith on the part of the two concerns, or indicate a conspiracy to defraud third parties who might thereafter —or as in this case, who had theretofore— purchased parcels of the land covered by the contracts, or, as in this case, other lands covered by the contract entered into long prior to defendants in error's purchase. One of the parties to these contracts was engaged in the development, the other in the settlement, of a vast area now recognized as one of the so-called garden spots of the world. One owned, operated, and was extending an established irrigation system over large bodies of land within that area; the other had purchased and was endeavoring to sell those lands in small tracts to persons who would settle upon and cultivate them. The purposes of both were of themselves lawful. If either concern afterwards resorted to deceit in carrying out its particular purpose, such deceit would not necessarily condemn the whole project, nor could it be chargeable to the other concern, unless the latter was a party to the fraudulent acts. Here the two concerns were separate and wholly distinct corporations, and the fact, if true, that the Stewart corporation procured defendants in error and others in a similar position to purchase lands through the fraudulent representations of its agents, could not serve to establish a conspiracy between both corporations to defraud defendants in error and others, unless it was clearly shown that the American Company actually participated in or connived at the particular frauds complained of. The whole of defendants in error's complaint amounts merely to an alleged showing that in a number of cases the Stewart Companies deceived certain individuals into purchasing small tracts of land out of the large bodies those companies purchased from the American Company. There was no evidence that the latter company participated in or in any manner connived at the alleged fraudulent acts of the other plaintiffs in error.

5. It further appears from the record that, several months after defendants in error had purchased the tract involved, W. F. Shaw, then vice president of the American Company, and president of the canal construction company mentioned, when approached by purchasers of small tracts out of a larger body of land not involved here, told them when in his opinion the irrigation canals would be extended to those tracts; that, a year after defendants in error purchased the tract here involved, Shaw wrote some person in Kansas, who had theretofore purchased a smaller tract, that the canals would be extended to the latter's farm in time for the ensuing crops, which was not done. Defendants in error now contend that these facts showed or tended to show the existence of the alleged conspiracy. For obvious reasons, this contention also is without merit.

[10, 11] The statement of facts in this cause covers 777 pages, of which approximately 600 pages are given over to copies of the three contracts we have discussed and to deeds through which small parcels out of the larger bodies of lands were conveyed to individual purchasers from the Stewart Companies. In the absence of any showing of a conspiracy, this evidence has no proper place in the case. Much of the remaining portion of the statement of facts is devoted to the testimony of numerous witnesses other than defendants in error concerning representations made to them by strangers to this litigation, as well as by agents of the Stewart Companies, which representations it is not contended were made to defendants in error, and which could have had no influence whatever upon them in purchasing the tract involved. In the absence of conspiracy, none of this evidence has any proper place in the case. The question of fact in this case is one of alleged false representations, which in order to be effectual must have been made directly to defendants in error by authorized agents of plaintiffs in error concerning the land to be purchased, and it is hoped that upon another trial the evidence in the case will be restricted to the legitimate sources and purposes of the real inquiry.

We overrule defendants in error's motion for rehearing.