Estate of Edward E. McLean, Deceased, Lee Roy Dehler, Administrator with Will Annexed, and Edna R. McLean v. Commissioner.
Estate of McLean v. Commissioner
Docket No. 2659-62.
United States Tax Court
T.C. Memo 1967-40; 1967 Tax Ct. Memo LEXIS 219; 26 T.C.M. (CCH) 201; T.C.M. (RIA) 67040; March 2, 1967
*219 The Commissioner, under date of June 8, 1962, determined deficiencies in income and additions to tax for fraud, in respect of the income taxes of Edward E. McLean, deceased, and his wife Edna R. McLean, for the years 1950, 1951 and 1952. Said taxpayers had filed a timely joint return for each of said years; and no waiver or extension of any statute of limitations had ever been filed or agreed upon. The petitioners pleaded the statute of limitations as a complete defense; and the respondent took the position that the statute of limitations is inapplicable, on the ground that all the returns were false or fraudulent with intent to evade tax, within the meaning of section 276(a) of the 1939 Code. Held, that the respondent has failed to establish that any of the above-mentioned returns was false or fraudulent with intent to evade tax. Accordingly, assessment and collection of all the deficiencies and additions to tax here involved are barred by the statute of limitations. Prentice H. Marshall and Richard L. Verkler, for the petitioners. Denis J. Conlon, for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: This case involves deficiencies in income tax and *220 additions to tax for fraud, which the Commissioner determined on June 8, 1962, in respect of the 1950, 1951 and 1952 income taxes of Edward E. McLean, deceased, and his widow Edna R. McLean. Because these taxpayers had filed a joint income tax return for each of the said years, the joint statutory notice of deficiencies was mailed to the above-named petitioners. The income tax liabilities thus determined were as follows: Addition to Tax
for Fraud
Sec. 293(b)
Year
Deficiency
1939 Code
1950
$65,367.54
$32,683.77
1951
80,220.72
40,110.36
1952
3,407.61
1,703.81 The issues for decision are: (1) Whether, as to each of said taxable years, assessment and collection of any income tax liability (including the liabilities above-mentioned) had become barred by the statute of limitations prior to the mailing of the Commissioner's notice of deficiencies. At the trial herein the Commissioner conceded, in substance: That no waiver of restrictions on assessment and collection had been filed; and that, for each of the above taxable years, assessment and collection would be barred unless he proved (in accordance with section 1112 of the 1939 Code) that Edward E. McLean or his wife had been guilty of fraud with intent *221 to evade tax. (2) If assessment and collection for any taxable year are not barred, whether the amounts of the liabilities determined for such year are excessive. Other issues raised by the pleadings, which pertained to capital gains on sale of certain real estate, were abandoned by petitioners at the trial. Findings of Fact Some of the facts have been stipulated. All stipulations of fact and all exhibits therein identified are incorporated herein by reference. Petitioner Lee Roy Dehler is the Administrator with Will Annexed of the Estate of Edward E. McLean, deceased; and as above indicated, petitioner Edna R. McLean is the widow of said decedent. The joint income tax return of Edward and Edna for each of the taxable years was timely filed with the collector of internal revenue at Chicago. Edna is a party to this proceeding solely by reason of her having joined in the filing of these joint returns. Edward E. McLean (herein sometimes called "McLean") died as the result of an automobile accident on August 6, 1957, at about 70 years of age. In his earlier years he had been a professor at an Oregon agricultural college; and for a time thereafter beginning in 1927, he had held a position *222 with the Kohr Packing Company. Sometime prior to 1943, McLean moved with his family to Lynn Center, a small rural community in western Illinois. There, he engaged in operating and leasing farms for profit; and in addition, he in 1943 established a sole proprietorship under the name of Triangle Feed Company, which engaged in the business of manufacturing and selling a protein supplement for livestock feed. This supplement was produced principally from meat scraps and tankage that were obtained in large quantities from slaughter houses and meat packing establishments. And since the protein content of the tankage and also that of the completed product were of major importance, both of these were tested by chemists; and the prices thereof were adjusted to reflect the analyses. Lynn Center had a population of only about 80 persons; [1] and accordingly most of McLean's financial and accounting affairs were handled in nearby towns and cities of larger size. He had a bank account in Cambridge, Illinois (population about 1,400), which was about 10 miles from Lynn Center; bank accounts in Orion, Illinois (population about 800), which was located 5 miles distant; another bank account in Bettendorf, *223 Iowa (population about 5,000), which was approximately 20 miles distant; and still another bank account in Davenport, Iowa (population about 80,000), which was about 24 miles distant. The Cambridge account was opened in May, 1941, which was about 2 years before McLean established the Triangle Feed business; and all his bank accounts were established prior to the taxable years here involved. In addition to these bank accounts, McLean and his wife had safe deposit boxes at the banks in Bettendorf and Davenport. Also, all the accounting books of McLean's feed business, and all the income tax returns of him and his wife, were handled by an accounting office in Rock Island, Illinois (located 20 miles from Lynn Center), - of which office the above-mentioned Lee Roy Dehler was the head. McLean devoted most of his working hours to operating his Triangle Feed Company proprietorship. His principal assistant was a man named Robert Benzon. And he also employed, in addition to the plant and trucking personnel, an office girl who performed *224 various secretarial and bookkeeping duties. The bookkeeping system used for said proprietorship was devised by the above-mentioned Lee Roy Dehler (who was a certified public accountant) at the time when the business was first established in 1943; and it was thereafter continuously used without substantial change. In general, the method was this: Whenever a customer's order for protein supplement was shipped either by truck or rail, the office girl would prepare an invoice therefor, send the original of this invoice to the customer, and retain a copy of the same in a file at the plant office. Subsequently upon payment being received from the customer, the office girl would remove said retained copy of the invoice from the office file; stamp it "paid"; and then make a notation of the sales receipt on a so-called "daily report." Notations also were made on this daily report of all disbursements, including those for purchase of tankage and for salaries and other business expenses. And then, about 2 or 3 times a week, these daily reports would be assembled and sent to Dehler's Rock Island office, where an accounting employee would use the same as the basis for making appropriate entries *225 in journals and ledgers maintained for the proprietorship. Thereafter, these journals and ledgers provided the basis from which Dehler prepared the statements of proprietorship operations (Schedule C) which were attached to the joint income tax returns of McLean and his wife. It is not entirely clear how McLean financed his proprietorship; but business records of the proprietorship show that in January 1951, a $15,000 bank loan for that business was outlined; and that in March 1951, McLean provided $8,000 cash for said business. On June 1, 1951, McLean organized an Illinois corporation named Triangle Feed Corporation; and he then transferred to this new corporation all the tangible assets and inventory of finished goods of his above-mentioned proprietorship. The opening balance sheet of the corporation as of June 1, 1951, which was included in its initial 1951 Federal income tax return, is as follows: ASSETS
Cash
$ 3,323.59
Inventory: Finished Goods
72,680.30
Capital Assets: Auto and Trucks
$ 28,814.34
Mill Equipment
40,578.29
Office Furniture & Fixtures
360.00
Building
30,274.97
Total Depreciable Assets
100,027.60
Less Reserve for Depreciation
60,404.15
39,623.45
Other Assets: Employees' Insurance
118.54
Total Assets
$115,745.88
LIABILITIES
Accrued Expenses
$ 511.81
Liability to Edward E. McLean
55,234.07
Capital Stock
60,000.00
Total Liabilities
$115,745.88
The *226 following schedule shows the results of operations of the proprietorship (Triangle Feed Company) for all years subsequent to its creation in 1943 (all as reported on Schedule C of the joint income tax returns filed by McLean and his wife): Calendar
Receipts
Net Cost of
Business
Net
Year
from Sales
Goods Sold
Deductions
Profit
1943
$ 360,814.14
$ 291,092.43
$ 62,379.89
$ 7,341.82
1944
470,093.26
372,729.57
91,875.50
5,488.19
1945
414,881.48
328,475.29
79,915.88
6,490.20
1946
528,478.58
431,583.78
89,135.59
7,759.21
1947
1,151,665.21
988,162.65
148,936.47
14,566.09
1948
1,444,832.00
1,236,571.07
184,088.20
24,172.73
1949
1,649,726.37
1,453,304.75
177,345.79
19,075.83
1950
1,718,550.57
1,542,298.81
162,621.77
13,629.99
1951
1,576,720.01
1,466,053.61
90,165.04
20,501.36 No Schedule C for the proprietorship was filed by McLean and his wife for any year after 1951 when the corporation was created. The following schedule shows the results of operations of the corporation (Triangle Feed Corporation) from its creation on June 1, 1951, until its voluntary dissolution in the latter half of 1952 (all as reported on the corporation's two short-period income tax returns): Receipts
Net Cost of
Business
Net
Period
From Sales
Goods Sold
Deductions
Profit
6/1/51 to 12/31/51
$686,377.10
$577,375.24
$107,574.13
$1,427.73
1/1/52 to dissolution
550,210.05
459,543.84
92,896.47
2,230.26
The *227 net profits both of the proprietorship and of the corporation were computed and reported for income tax purposes, in accordance with a cash receipts and disbursements method. In July 1952, the Triangle Feed Corporation sold all its assets and going business to Regal Packer By-Products Company, a corporation, for the price of $30,000; and it thereupon discontinued operations and voluntarily dissolved. McLean at no time thereafter engaged either directly or indirectly in any feed supplement business; but rather, until his death he devoted his business efforts solely to farming operations. The Government's examination of the joint income tax returns of McLean and his wife for the years 1950 through 1952, was not commenced until late in 1959. And the Commissioner's notice of deficiencies for such years was not issued until June 8, 1962 - which date was more than 11 years after the joint return of the McLeans for 1950 had been filed; and was nearly 10 years after complete termination of all phases of the manufacture of livestock feed supplement, which had been handled first by the proprietorship and then by the corporation; and also was about 5 years after McLean had died. No waiver of *228 restrictions on the period of limitations for assessment and collection of any income tax liability for any of the taxable years involved, was ever filed or agreed upon. The deficiencies which the Commissioner determined for the several years here considered, resulted principally from increases made by him in the amounts of the proprietorship's receipts from sales of merchandise - as reported for income tax purposes on the Schedules C of the joint returns filed by McLean and his wife. The amounts of these increases as determined by the Commissioner in his notice of deficiency, were: $115,867.31 for the year 1950; $126,033.56 for the year 1951; and $16,165.66 for the year 1952. However, on brief the Commissioner made claim to increases of different amounts, which he computed as follows (see Commissioner's principal brief pages 27-29): Proprietorship's Receipts from Sales
As Reported on
As Restated
Taxable
Schedule C of
by
Amount of
Year
McLean Return
Respondent
Increase
1950
$1,718,550.57
$1,827,775.11
$109,224.54
1951
1,576,720.01
1,702,303.57
125,583.56
1952
(No Schedule
581,229.55 * *229 21,165.66 *
C filed for 1952,
which was after
assets had been
acquired by
corporation) The corporation (Triangle Feed Corporation) is not a party to this proceeding. Opinion The principal issue for decision is, as before stated, whether assessment and collection of the income tax liabilities which the Commissioner determined for the taxable years 1950, 1951, and 1952, had become barred by the statute of limitations before barred by the statute of limitations before the statutory notice of deficiencies was issued to the petitioners on June 8, 1962. If the liabilities had become barred on the latter date, that will be determinative of this case. The period of limitation for each of the taxable years *230 would normally be 3 years after the return was filed, or 5 years if more than 25 percent of the gross income had been omitted from the return. Section 275, Internal Revenue Code of 1939. Since we have hereinbefore found that the joint return of McLean and his wife for each of the taxable years was timely filed, and that no waiver or extension of any limitation period was ever filed or agreed upon - it is obvious that the petitioners' plea of the statute of limitations as a complete defense to all the determined liabilities, must be sustained unless the evidence herein is sufficient to establish that one or more of said returns was false or fraudulent with intent to evade tax. See section 276(a), Internal Revenue Code of 1939. Whether or not any of the returns of the McLeans actually was false or fraudulent with specific intent to evade tax, is of course a factual question which must be resolved by our consideration and weighing of all of the evidence. The burden of proving fraud is upon the Commissioner. Section 1112, Internal Revenue Code of 1939. And to bear such burden, the evidence of fraud must be clear and convincing. Welburn Mayock, 32 T.C. 966, at 974. In the instant case, *231 the respondent's position is that all the returns which McLean and his wife filed for the years 1950, 1951, and 1952, were false or fraudulent with intent to evade tax; and, hence, that there is no statutory bar to assessment and collection of any income tax liabilities for said years. In support of this position, respondent contends, in substance: (1) That during each of the years 1950, 1951, and 1952, the decedent Edward E. McLean "diverted" numerous business receipts of his sole proprietorship, the Triangle Feed Company; (2) that he deposited such "diverted" receipts in "secret bank accounts" which he maintained and used for his personal benefit; and (3) that he failed to report such "diverted" business receipts, for income tax purposes, "in a manner which was calculated to conceal and * * * to evade the payment of his federal income taxes." Respondent has not charged the decedent's widow, Edna, with any specific act of fraud, but apparently relies solely on the legal principle that she will be jointly liable with her husband's estate for any liabilities finally determined - because of her having executed the joint returns. After having considered and weighed all the evidence herein, *232 including the testimony of all witnesses, it is our conclusion and we here find and hold, that such evidence is not sufficient to establish the above-mentioned position of the respondent. In arriving at this conclusion, we regard the following factors to be significant: (1) Important accounting records both of the Triangle Feed Company and of customers and banks with which it transacted business, have become unavailable as evidence herein, by reason of the long period which elapsed between the time when the proprietorship terminated its business operations and the time when respondent first asserted the disputed liabilities here involved. The circumstances incident to said delay are these: In the late fall of 1959, the Internal Revenue Service, acting in accordance with usual practice, assigned Revenue Agent Farr to examine the estate tax return which had been filed for the Estate of Edward E. McLean, deceased; and during the course of such estate tax examination, Farr decided to look into the operating results of the Triangle Feed Company, in which the decedent had been active. As we have heretofore found, McLean completely terminated all his interest in that business in 1952; and *233 hence when Farr and his assistant began their examination of such business about 7 or 8 years later they found that many of the business records which they ydesired had become unavailable. There is no evidence that such unavailability was due to any concealment or fraudulent conduct by anyone; and the respondent does not contend otherwise. Even the Internal Revenue Service was unable to locate the original 1952 joint income tax return which McLean and his wife had filed. As regards the accounting records of the Triangle Feed Company business, those found and introduced in evidence included principally: Journal accounts and ledger accounts of the proprietorship for the calendar years 1951 and 1952; journal accounts and ledger accounts of the successor corporation Triangle Feed Corporation, from its creation in June 1951 until its dissolution in 1952; a few cancelled checks, deposit slips, and bank statements of both the proprietorship and the corporation; and a box of other miscellaneous records that were irrelevant to the instant case. On the other hand, the records of said business which could not be found, were principally these: There were no journals, ledgers, and other accounting *234 records of any kind for the year 1950; there were no retained copies of invoices for products sold either by the proprietorship or the corporation, for any year; and there also were no "daily reports" of either the proprietorship or the corporation for any year. As regards the customers of the Triangle business, most of these had followed the practice of incinerating their old records after a period of years, with the result that most of them had no invoices or cancelled checks covering their purchases of protein supplement from Triangle. Likewise, the banks with which McLean had dealt followed a practice of destroying old records after a number of years (including deposit slips), although some of them retained microfilm copies of checks cashed or deposited. Two of the banks (the ones at Davenport and Bettendorf, Iowa) incinerated the deposit slips pertaining to McLean's account shortly after the revenue agents had examined the same; with the result that said deposit slips were not available as evidence at the time of the trial. By reason of the foregoing those records of the Triangle business which were offered and received in evidence are not complete; and in our opinion they are *235 inadequate in themselves to establish that there has been any under-reporting of income, fraudulent or otherwise, from the Triangle business. (2) The testimony of all witnesses who personally participated in the preparation and handling of the records of the Triangle business for the years involved, is contrary to respondent's position. One of these witnesses, was Lee Roy Dehler. He, as hereinbefore found, is the accountant who established the accounting system for the Triangle business; was the head of the accounting office, in which all the journal and ledger accounts of said business were maintained; and also is the person who prepared all the income tax returns of McLean and his wife. Dehler testified that he had never been aware of any fraudulent action or intentional understatement of taxable income by McLean; and that, in his opinion, the results of the operations of the Triangle business for each of the years here involved, had been correctly reported in the joint income tax returns of McLean and his wife. Two other witnesses who personally participated in the preparation and handling of the accounting records of the Triangle business for the years involved, were Marilyn Stack *236 and Ja Vana Gray. They, in turn, had been responsible for maintaining the records of the Triangle plant office for the years involved. In this capacity, they had: Prepared and issued the invoices for all goods sold, and maintained copies of the same until each particular invoice was fully paid; handled the disbursements made at the plant for purchase of raw materials, and for salaries, wages, and other operating expenses; and, in addition, prepared and forwarded to Lee Roy Dehler's accounting office in Rock Island, the "daily reports" of the business operations. Each of these two witnesses also testified in substance, that she had never seen any indication of any fraudulent action by McLean in connection with the Triangle business. We regard the testimony of each of the three above-named witnesses to be highly credible, and to be entitled to substantial weight in our decision of the present issue. (3) The respondent, in attempting to establish that McLean fraudulently understated his income from the Triangle Feed Company proprietorship, has purported to use two methods. However, analysis shows that such methods are only superficially different. Each is based on an attempt to identify *237 certain bank deposits as being receipts from the sale of merchandise; and then the treatment of such "receipts" as being equivalent, dollar for dollar, to "taxable income." The following is a brief description of such methods. The first, which respondent designates as a proof of specific items, is the one which Revenue Agent Farr employed during his examination. He first assumed that all of the several bank accounts which McLean and his wife maintained (other than those maintained at the State Bank of Orion in the respective names of the Triangle proprietorship and the Triangle corporation) were "secret" and "hidden" accounts which McLean used for the purpose of fraudulently diverting sales receipts from said feed business. Next, proceeding on the above assumption, the Revenue Agent attempted through his own efforts, without consulting or checking with anyone, to identify which of the several deposits in these various old bank accounts represented receipts from the sale of feed supplement. And he then treated the total of all the deposits which he regarded to be proceeds from sale of goods, as the equivalent of taxable income. Respondent's second purported method - denominated by *238 him as a "bank deposits reconstruction of petitioners' income" - was this. He first determined the total deposits made in all bank accounts of McLean and his wife, including: McLean's accounts in Cambridge, Davenport, and Bettendorf; his wife's personal account at Orion; and also the separate accounts of the Triangle proprietorship and of the Triangle corporation at Orion. He then made certain "subtractions" from the total deposits in each bank account, which he regarded to represent non-business deposits. He then designated the balance of such deposits to be "gross business receipts" and, to the extent they exceeded the receipts reported on the McLean returns, he treated the same as being additional taxable income. Each of these purported methods is subject to the following errors: (A) There is no support in the evidence for respondent's assumption that any of the bank accounts was "concealed" or "hidden." All were openly maintained either in McLean's own name or the joint names of him and his wife. All were opened prior to the taxable years involved; and the Cambridge account was even opened as early as 1941, which was approximately 2 years before the Triangle business was established. *239 (B) The revenue agent demonstrated no qualification for determining which of the deposits in any particular bank account represented receipts for goods sold by the Triangle proprietorship. There is no evidence that he had personal knowledge of the Triangle business or its customers; and his classification of the deposits was based on the name of the payor of the deposited check, without consultation with anyone who had personal knowledge of the business accounts. (C) There is no support in the evidence for the agent's conclusion that any deposit which he selected was equivalent to taxable income. The selected deposits allegedly represented receipts from sale of goods; yet he allowed nothing whatever for cost of goods in respect of such sales, and also nothing for expenses in effecting such sales. (D) Regarding the 1950 bank deposits, there is no trustworthy way to determine what particular receipts were included in the aggregate sales figure reported on Schedule C of the 1950 McLean return. The reason for this is that no books or records of the Triangle Feed Company proprietorship could be found for the year 1950 and hence there is no way to identify which of the sales transactions *240 of that year had either been reported or been unreported. Respondent sought to meet this situation by attempting to reconcile the total deposits in the proprietorship's Orion bank account, with the gross receipts reported on Schedule C of the McLean 1950 joint return. However the two would not reconcile; and also accountant Dehler who prepared said Schedule C, testified that no bank deposits were utilized in computing the gross receipts reported in said Schedule C. (E) Regarding the 1951 and 1952 bank deposits, the respondent failed to distinguish between those deposits which may have represented receipts from sales made by the Triangle proprietorship and those which may have represented receipts from sales made by the Triangle corporation, which is not a party to this proceeding and of which the income was not includable in the McLean returns. Indeed the respondent, without any justification in the evidence, has entirely disregarded the Triangle corporation as a separate taxable entity. By failing to distinguish the separate accounts of the two business units, the respondent has failed to establish any understatement of McLean's income for either 1951 or 1952. (F) Finally, the respondent *241 did not attempt to reconstruct the income of the McLeans by any usual or recognized method. He did not make any reconstruction of income through use of a net worth statement, which requires consideration of both assets and liabilities; nor did he make any reconstruction of income by use of a true bank deposit method, which requires consideration of both receipts and disbursements. See Morrison v. United States, 270 F. 2d 1 at page 2 (C.A. 4, 1959). He did not even present in evidence a reconstructed Schedule C (of the type used in a return of a sole proprietor of a business) for the Triangle Feed Company proprietorship. Based on all the foregoing, we find and hold that the respondent has failed to establish that any of the joint returns of McLean and his wife for any of the taxable years here involved was false or fraudulent with intent to evade tax; and accordingly, that the assessment and collection of all the deficiencies and additions to tax involved are barred by the statute of limitations. We decide this first issue in favor of the petitioners. And having so decided the first issue, we do not reach and find it unnecessary to decide the second issue. Decision will be entered *242 for the petitioners. Footnotes
1. The population of the towns and cities herementioned have been judicially noticed - based on Rand McNally Commercial Atlas and Marketing Guide, 88th Ed. (1957).↩
*. The above-stated increase for the year 1952 was computed by respondent (as shown in the computation on page 29 of his principal brief): By stating that Gross Business Receipts "as Reported" were $562,963.45, notwithstanding that no business receipts whatever were reported for the proprietorship for said year; by then stating that the proprietorship's Gross Business Receipts "as Corrected" were $581,229.55; and then, after certain adjustments, by inconsistently charging the proprietorship with "Additional Income" of $21,165.66, without also charging it with any of balance of said "Corrected Receipts" of $581,229.55.